UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                   Plaintiff,            **MEMORADUM & ORDER**
                                          97-CR-877-1 (DRH)
   -v.-                               15-CV-5349 (DRH)
                                          15-CV-5865 (DRH)

VANCE BAKER,

                   Defendant.

_____

**HURLEY**, Senior District Judge:

       The purpose of this Memorandum is to address Defendant Vance Baker's

("Defendant's") four undecided post-trial motions: (1) the petition to vacate, set aside, or correct

a sentence pursuant to § 2255 for ineffective assistance of counsel and to reinstate his right to

direct appeal (Section 2255 Petition, No. 15-CV-5349 [ECF No. 1] (Sept. 8, 2015); No. 97-CR-

877-1 [ECF No. 307] (Sept. 8, 2015)); (2) the transferred petition for purported actual innocence

pursuant to 28 U.S.C. § 2241 (Transferred § 2241 Petition, No. 97-CR-877 [ECF No. 308] (Oct.

6, 2015)); (3) the motion to appoint counsel (Motion to Appoint Counsel, No. 97-CR-877 [ECF

No. 317] (Aug. 4, 2016)); and (4) the amended petition to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255, asserting both actual innocence and a *Johnson* claim that

the Court's alleged use of the residual clause of § 924(c)(3)(B) to attach an enhancement to count

1 is void for vagueness (Amended § 2255 Petition, No. 97-CR-877 [ECF No. 320] (June 12,

2017)).

       On June 18, 2018, Defendant filed a letter stating that he "would like to withdraw all

post-trial motions he was pursuing . . . [except] the Section 2255 motion (Case No. 15-CV-5349)

(Counsel's failure to file a notice of appeal)." (Letter from Defendant, No. 97-CR-877 [ECF No.

1

332] at 1 (June 18, 2018)).  Thereafter, on August 20, 2018, Defendant filed a letter titled

"Clarification of Argument Defendant Wishes to Raise on Direct Appeal," in which he claims

that because "murder was not proven beyond a reasonable doubt in count two due to improper

jury instructions," Defendant was therefore improperly sentenced on counts one and three.

(Letter from Defendant, No. 97-CR-877 [ECF No. 335] at 1 (Aug. 20, 2018)).

 As far as the Court can understand from the aforementioned submissions, Defendant has

withdrawn: (1) his Amended § 2255 Petition asserting both an actual innocence and a *Johnson*

claim; and (2) his Motion to Appoint Counsel.  As the Transferred § 2241 Petition was later

incorporated into Defendant's Amended § 2255 Petition per the instructions of both the Middle

District of Pennsylvania and the undersigned, the Court concludes that Defendant also intends to

withdraw this motion.  For the reasons set forth below, the original § 2255 petition asserting

ineffective assistance of counsel and seeking to reinstate his right to direct appeal is denied as

time-barred.

**BACKGROUND**

I. *Evidence at Trial*

 The following key facts come from a summary provided in the Second Circuit's decision

in *U.S. v. Baker*, 262 F.3d 124 (2d Cir. 2001).

 The evidence at trial demonstrated that Defendant, together with his mother Rosie Baker,

killed Dr. Daniel Hodge in connection with a long-running Medicaid fraud scheme.  *Id.* at 126.

Rosie Baker was the director of Long Life Home Health Care ("Long Life"), a nonprofit

Medicaid services provider in Brooklyn, New York, which provided home health care aides for

Medicaid patients under a program administered by the New York City Human Resources

Administration.  *Id.*  Rosie Baker, with the assistance of Defendant, devised a scheme to defraud

the government by diverting funds from Long Life's budget via kick-backs for certain medical procedures, and self-dealing rental and services contracts between Long Life and several entities owned by Rosie Baker. *Id.* Between 1988 and 1996, Rosie Baker appropriated almost $2 million from Long Life for her personal benefit. *Id.*

Dr. Hodge was also involved in Defendant's and Rosie Bakers' Medicaid fraud scheme. *Id.* He provided medical services to Long Life employees and paid kick-backs to Rosie Baker. *Id.* Dr. Hodge and Rosie became romantically involved, and even lived together. *Id.* After Dr. Hodge identified Defendant for the police for an unrelated crime of attempted murder and attempted assault, the relationship between Dr. Hodge and Rosie fell apart. *Id.* Rosie Baker began to exclude Dr. Hodge from Long Life, and even threatened to kill him. *Id.* at 127. Dr. Hodge demanded that Rosie pay him money allegedly owed to him in connection with the Long Life Medicaid scheme. *Id.* Dr. Hodge eventually filed suit in New York State court to collect these funds. *Id.* Dr. Hodge also threatened to go to law enforcement authorities with evidence of the Long Life Medicaid fraud. *Id.*

In May 1997, Rosie Baker asked Michael Davis—her former boyfriend and sometime-participant in the Long Life scheme—to kill Dr. Hodge. *Id.* Mr. Davis declined, at which point Rosie Baker told him that she would get Defendant to arrange for the killing. *Id.* At trial, the government presented evidence that Defendant stated in a telephone conversation that a computer on which Dr. Hodge claimed to have saved incriminating evidence about Long Life had been destroyed. *Id.* Defendant was also overheard asking his father on the telephone whether he had gotten rid of the revolver and the shells. *Id.* Furthermore, Mr. Davis testified that in late June or early July, Rosie Baker told him that she had arranged that Defendant would get someone to kill Dr. Hodge, but that Defendant had done it himself, making it look like a

robbery. *Id.*

 II. *Defendant's Trials and Sentencing*

 On July 29, 1998, following a two-week jury trial before the Honorable Jacob M. Mishler, Defendant was convicted on one count of conspiracy to commit murder with the intent to obstruct justice in violation of 18 U.S.C. § 371; one count of murder with intent to obstruct justice in violation of 18 U.S.C. § 1512(a)(1); one count of conspiracy to use a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(o); one count of use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k), § 924(a)(1)(B). Defendant also pled guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 286.

 On February 14, 2000, Judge Mishler sentenced Defendant to life imprisonment for murder, conspiracy to commit murder, and conspiracy to use a firearm; forty-six months concurrent for conspiracy to defraud; sixty months consecutive for use of a firearm; seventy-eight months concurrent for possession of a firearm with an obliterated serial number; and restitution to the New York City Human Resources Administration in the amount of $1,926,576.00.

 On February 24, 2000, Defendant appealed to the United States Court of Appeal for the Second Circuit, contending that: "(1) the district court improperly invaded the secrecy of the jury's deliberations and improperly dismissed one of the jurors after the deliberations had begun; and (2) the district court was precluded from sentencing the defendants to the term of life imprisonment authorized for murder to obstruct justice because on the murder count the district court failed to charge the jury on the essential elements of murder under section 1512(a)(1),

charging only on the essential elements of the lesser included offense of using physical force under section 1512(b)." *U.S. v. Baker*, 262 F.3d at 126. On August 15, 2001, the Second Circuit rejected the first argument but found merit in the second on the basis that the error in the jury instructions permitted the jury to convict Defendant "without finding that the government had proved beyond a reasonable doubt every element of the crime of murder[.]" *Id.* at 133. The Second Circuit vacated the sentence and remanded back to the District Court for "refashioning the sentences." *Id.* at 134. Judge Mishler, having by then passed away, the case was reassigned to the undersigned for resentencing.

On September 23, 2002, this Court re-sentenced Defendant to five years of imprisonment on Count One; ten years of imprisonment on Count Two; twenty years of imprisonment on Count Three; five years imprisonment on Count Four; five years of imprisonment on Count Six; and five years of imprisonment for conspiracy to defraud the United States. (Amended Judgment, No. 97-CR-877 [ECF 280].) All counts run consecutively, for a total of fifty years imprisonment. *Id.* The Court also imposed a Supervised Release period of three years on each count to run concurrently, and two Special Conditions of Supervised Release that: (1) Defendant cannot possess a firearm and, (2) Defendant must pay the order of Restitution in the sum of $1,926,576.00. (*Id.*) All remaining open counts were dismissed. (*Id.*)

III.    *Defendant's Subsequent Petitions*

Over the following seventeen years, Defendant has made more than five motions to this Court related to his conviction and sentencing as well as several motions to other courts. On October 31, 2005, Defendant filed a motion "Under 60B Newly Discovered Evidence" claiming that "Judge Mishler violated [his] constitutional rights to due process for . . . (1) Failure to sentence petitioners on the facts found by the Jury; (2) Unconstitutional failure to properly

instruct the jury;" (3) Ignoring the jury fact finding and sentencing the petitioner unconstitutionally, and "(4) Failure to disclose petitioners were tried under the uniform commercial code under contract law." (Notice of Motion Under 60B, No. 97-CR-877 [ECF No. 290] ¶ 1.6.) On January 27, 2006, the motion was denied without prejudice as this Court determined that the filing should have been made as a motion under 28 U.S.C. § 2255. (Order Denying Motion, No. 97-CR-877 [ECF No. 294] at 1.) Defendant proceeded to appeal this decision on March 17, 2006, which the Second Circuit denied on March 14, 2007 on the basis that Defendant defaulted. (Notice of Appeal, No. 97-CR-877 [ECF No. 296].)

Seven years later, on May 16, 2014, Defendant filed a habeas petition pursuant to 28 U.S.C. § 2241 for "Actual Innocence" in the Middle District of Pennsylvania, where he was serving his sentence. *Baker v. Ebbert*, 2014 WL 2879785, No. 14-CV-944 (M.D. Pa. June 24, 2014). On June 24, 2014, the Middle District of Pennsylvania transferred the petition to this Court, finding that it did not have jurisdiction to entertain the habeas petition and that the claims "are governed by 28 U.S.C. § 2255 and must be filed in the court of conviction[.]" *Id.* at *4.

On May 19, 2014—only three days after filing the habeas petition with the Middle District of Pennsylvania—Defendant filed a motion in this Court to reduce his sentence in light of *Alleyne v. United States*, 133 S.Ct. 2151 (2013). (Motion to Reduce Sentence, No. 97-CR-877 [ECF No. 302] at 1.) On June 4, 2014, this Court denied the motion without prejudice, holding once again that it should have been brought as a § 2255 petition. (Order Denying Motion to Reduce Sentence, No. 97-CR-877 [ECF No. 303] at 1.) The Court gave Defendant 60 days to determine if he wished to convert the motion to a § 2255 motion. (*Id.*)

The following month, on July 21, 2014, Defendant moved to reduce his sentence "object[ing] to the Court construing his motion as a 28 U.S.C. 2255[.]" (Defendant's Motion of

Objection, No. 97-CR-877 [ECF No. 306] at 2.)  On August 14, 2014, this Court denied the

motion without prejudice once again, explaining that it "should be considered as made under

§ 2255 because of the nature of the relief sought."  (ECF Unnumbered Order dated August 14,

2017, No. 97-CR-877.)  The Court gave Defendant thirty days and "one final opportunity to

advise the Court whether he would like to withdraw the motion or to elect to treat it as a request

for relief pursuant to 28 U.S.C. § 2255 and to amend it to contain any § 2255 claims that he may

have."  (*Id.*)  Defendant never advised the Court on whether he wanted to withdraw the motion

or treat it as a § 2255 motion.

A year later, on September 8, 2015, Defendant filed his § 2255 Petition, which "only

addresses the ineffectiveness of counsel's failure to file a notice of appeal and does not attack the

sentence of conviction."  (Motion to Vacate, No. 97-CR-877 [ECF No. 307] at 1.)  Specifically,

Defendant alleges that his counsel, Steven R. Kartagener, was ineffective for not filing a notice

of appeal of the resentencing hearing held before this Court on September 23, 2002, when asked

to do so by Defendant and Rosie Baker.  (*Id.*)

While Defendant states that the present motion is brought on the grounds of ineffective

assistance of counsel, in the first paragraph he states that it is "filed solely to obtain reinstatement

of his appellate rights."  (*Id.*)  Reading this § 2255 Petition liberally, the Court assumes that it is

brought both on ineffective assistance of counsel for failure to file an appeal grounds, and to seek

reinstatement of Defendant's right to direct appeal.

Before this Court could rule on Plaintiff's § 2255 motion, Defendant filed an application

with the Second Circuit for leave to file a second or successive Habeas Corpus Petition.

(Petition for Writ of Habeas Corpus, No. 16-CV-1782, [ECF No. 1] at 5 (2d Cir. June 6, 2016).)

In this application, Defendant claimed that the government and Court improperly attached an 18

7

U.S.C. § 924(c) enhancement to his conspiracy count. (*Id.* at 5.) Defendant argues that post-*Johnson*, the § 924(c) residual clause is void for vagueness. (*Id.*) On July 18, 2016, the Second Circuit denied the motion as unnecessary because this Court had not yet ruled on Defendant's first § 2255 motion. (Certified Order, No. 97-CR-877 [ECF No. 316] at 1.) The Second Circuit then transferred the proceeding to this Court. (*Id.*) On August 4, 2016, Defendant moved to appoint counsel to provide "instructions on how to complete his litigation of the *Johnson* claim[.]" (Motion to Appoint Counsel at 1.)

On June 12, 2017, Defendant filed an amended Motion to Vacate under 29 U.S.C. § 2255 setting forth both his actual innocence claim and his *Johnson* claim. (Amended Section 2255 Petition at 1.) Before the Court could decide Defendant's Amended § 2255 Petition consolidating two of his five pending claims, Defendant filed a letter withdrawing all post-trial motions except the original Section 2255 petition in Case No. 15-CV-5349 asserting ineffective assistance of counsel and seeking to reinstate his right to appeal. (Letter from Defendant, No. 97-CR-877 [ECF No. 332] at 1 (June 18, 2018)).

## DISCUSSION

In support of his numerous pending motions, Defendant has submitted over 80 pages of briefing and exhibits. As Defendant is proceeding pro se, the Court shall construe his papers to state the strongest possible arguments they suggest. The Court notes, however, that Defendant's briefs are not a model of clarity or organization, with confusing and occasionally self-contradictory allegations.

I. *Section 2255 Petition*

A. Section 2255 Legal Standard

Under 28 U.S.C. § 2255, a prisoner in federal custody may petition a federal court to

vacate, set aside, or correct his or her sentence. Relief under § 2255 is available to rectify

constitutional errors, a lack of jurisdiction in the sentencing court, "an error of law or fact that

constitutes a fundamental defect which inherently results in [the] complete miscarriage of

justice," or another ground for collateral attack. *See Graziano v. United States*, 83 F.3d 587, 590

(2d Cir. 1996). This standard is strictly construed to recognize that collateral attacks on criminal

convictions are in "tension with society's strong interest in [their] finality." *Ciak v. United*

*States*, 59 F.3d 296, 301 (2d Cir. 1995)) (alterations in original).

"[T]he filing of a motion pursuant to § 2255 does not automatically entitle the movant to

a hearing; that section does not imply that there must be a hearing where the allegations are

'vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d

Cir. 2013). Rather, the Second Circuit has established that courts may pursue a "middle road" of

deciding disputed facts on the basis of written submissions. *Raysor v. United States*, 647 F.3d

491, 494 (2d Cir. 2011). Where a petitioner proceeds pro se, his motion is held to "less stringent

standards than [those] drafted by lawyers." *Santiago v. Unites States*, 187 F. Supp. 3d 387, 388

(S.D.N.Y. 2016) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (internal quotation marks

omitted). Nevertheless, pro se litigants are "not exempt from compliance with relevant rules of

procedural and substantive law." *Carrasco v. United States*, 190 F. Supp. 3d 351, 352 (S.D.N.Y.

2016) (internal quotation marks omitted).

B. Section 2255 Statute of Limitations

Section 2255 provides, in relevant part, that a § 2255 petition must be filed within one

year of the later of:

(1) The date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by
governmental action . . . is removed [];
(3) the date on which the right asserted was initially recognized by the

> Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). A *habeas* petitioner may "invoke the courts' power to equitably toll the limitations period[,]" but only in "rare and exceptional circumstances[.]" *Yong Suk Howang v. United States*, 2019 WL 1994264, at *8 (S.D.N.Y. Apr. 19, 2019) (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)) (internal quotation marks omitted). To equitably toll the one-year limitations period, the petitioner must show that "extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Id.* As to the first prong of this test, the Second Circuit has established a "high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). As to the second prong, "[t]o show that extraordinary circumstances 'prevented' him from filing his petition on time, petitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed in time notwithstanding the extraordinary circumstances.'" *Yong*, 2019 WL 1994264, at *8 (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2011)).

A § 2255 petition to reinstate appellate rights is subject to the same limitations periods under § 2255(f) as any other § 2255 motion, even though the rule regarding filing successive petitions is different for this type of request for relief. *See, e.g.*, *Carranza v. United States*, 2016 WL 7495183, at *2 (S.D.N.Y. Dec. 22, 2016) (analyzing whether a § 2255 petition to reinstate appellate rights was timely under § 2255(f)(4)); *see also Vu v. United States*, 648 F.3d 111, 114 (2d Cir. 2011) (explaining that a § 2255 petition seeking to reinstate appellate rights is not a

collateral attack on the petitioner's sentence or conviction, and therefore is exempt from the rule requiring leave to file successive petitions).

C.  Defendant's § 2255 Motion is Time-Barred

Here, the timeline of events is unusually convoluted because of the transferred petition, successive petition, remanded petition, amended petition, and withdrawn petitions.  Presently, Defendant is asserting ineffective assistance of counsel for failure to appeal counts one, two, and three, as well as a reinstatement of his right to direct appeal, as set forth in his original § 2255 motion that he filed in Case No. 15-CV-5349 on September 8, 2015.  The Amended Judgment on counts one two and three was filed on September 23, 2002.  As Defendant did not file an appeal, the Amended Judgment became final on October 7, 2002, fourteen days after it was entered.  *See Superville v. United States*, 771 F. App'x 28, 31 (2d Cir. 2019).  Accordingly, Defendant's time to file a habeas petition pursuant to § 2255(f)(1) expired on October 7, 2003.

The limitations periods of § 2255(f)(2) and (f)(3) are inapplicable here, because Defendant does not assert that the government blocked his motion or that the Supreme Court established new rights.  However, the Second Circuit has previously ordered that a § 2255 petition for ineffective assistance of counsel that is brought on the basis that counsel failed to file an appeal as requested should also be evaluated for timeliness pursuant to § 2255(f)(4).  *Williams v. United States*, 2016 WL 11622034, at *1 (2d Cir. 2015).  Likewise, requests for the reinstatement of appellate rights are also analyzed under § 2255(f)(4).  *See Carranza*, 2016 WL 7495183, at *3.  In other words, the Court should look at "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).  The Second Circuit has separately explained that the relevant inquiry under § 2255(f)(4) is "when a duly diligent person in petitioner's circumstances would have

discovered [facts supporting the claim.]" *Id.* (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)) (alterations in original).

On April 29, 2005, Defendant wrote a letter to the Court explaining that he had asked his attorney to file an appeal and that no such action had been taken. (Letter from Defendant (Apr. 29, 2005), No. 97-CR-877 [ECF No. 283] at 1.) Therefore, Defendant knew that his attorney had failed to comply with his request on April 29, 2005, at the very latest. Presumably, Defendant could have known this sooner with the requisite due diligence. However, even applying the most generous limitations period possible under § 2255(f)(4), Defendant's time to file a *habeas* petition for ineffective assistance of counsel on the basis of his attorney's failure to file an appeal and/or to reinstate his appellate rights expired on April 29, 2006.[1] Defendant did not file the instant motion until more than nine years after that date, well beyond the limitations period.

Defendant has not set forth any grounds for tolling the limitations period, let alone any extraordinary circumstances that would account for the nine-year delay in filing the instant motion. Defendant's argument that no limitations periods should apply because his Sixth Amendment rights have been violated, is unsupported and unavailing. The Court declines to address this in depth given the Second Circuit precedent ordering that the limitations period of § 2255(f)(4) should apply to ineffective assistance of counsel petitions and petitions to reinstate appellate rights. *See, e.g.*, *Williams v. United States*, 2019 WL 4111130, at *5 (N.D.N.Y. June 12, 2019); *see also Carranza*, 2016 WL 7495183, at *3. Accordingly, Defendant's motion is

---

[1] To avoid any potential confusion, the Court notes that the Orders entered by the undersigned in May and August 2014 directing Defendant to make or withdraw any § 2255 petition within 60 and 30 days respectively had no impact on the relevant limitations period. Rather, the Court was trying to manage the dockets in Defendant's criminal and civil proceedings to ensure that any applications would be appropriately addressed. Had the same application for ineffective assistance of counsel been made in accordance with those deadlines, which it was not, Plaintiff's claim would still have failed because it was well outside the limitations period set forth in § 2255(f)(1), (4).

time barred and his § 2255 motion is denied.

## CONCLUSION

Defendant has historically filed, amended, re-filed, and withdrawn successive petitions before this Court, other district courts, and the Second Circuit. To avoid further confusion and delays, the Court alerts Defendant that the limitations periods under § 2255(f) discussed herein apply to *all* § 2255 claims, and that Defendant must show a "rare and exceptional circumstance[]" that caused the delay to justify tolling the one-year statute of limitations. *See Belot*, 490 F.3d at 205. Thus far, Defendant has not demonstrated an extraordinary circumstance that would warrant tolling the statute of limitations. Likewise, if Defendant should seek to file a § 2241 petition to assert the actual innocence claim he withdrew, he is reminded that he will have to demonstrate that a § 2255 petition would be inadequate. As the Middle District of Pennsylvania explained in its decision on Defendant's original § 2241 motion, "Section 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255." *Baker v. Ebbert*, 2014 WL 2879785, at *2 (internal quotation marks and citations omitted).

For the reasons set forth above, Defendant's § 2255 motion for ineffective assistance of counsel and to reinstate his right to direct appeal is denied as time barred. Pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied as Defendant has not made a substantial showing of a denial of a constitutional right. Defendant's pending Motion to Appoint Counsel, his Amended § 2255 Petition, and his Transferred § 2241 Petition

are hereby withdrawn at Defendant's request.  The Clerk of Court is directed to close Case No.

15-CV-5349 and Case No. 15-CV-5765.

**SO ORDERED.**
Dated: Central Islip, New York
October 4, 2019

_/s/ Denis R. Hurley_____
Denis R. Hurley
United States District Judge