```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
VANCE BAKER,
                    Petitioner,
                                              MEMORANDUM & ORDER
          -against-                           97-CR-0877 (JS)

UNITED STATES OF AMERICA,

                    Respondent.
-----------------------------------X
APPEARANCES
For Petitioner:     Vance Baker, Pro Se
                    #48623-053
                    FCI Fort Dix
                    Federal Correctional Institution
                    P.O. Box 2000
                    Joint Base MDL, New Jersey  08640

For Respondent:     Charles N. Rose, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722
```

SEYBERT, District Judge:

Currently before the Court is the motion, and related submissions, of pro se Petitioner Vance Baker ("Petitioner" or "Baker"),[1] which the Court has deemed to be a request for reconsideration of the Court's: (1) May 6, 2022 Memorandum & Order, denying Petitioner's Section 2255 motion (hereafter, the "May 2022

---

[1] Petitioner initiated this Motion on a pro se basis, but had counseled memoranda of law submitted in support of same; he also filed a pro se support memorandum. (See supra at 2.)

Section 2255 M&O" or "May 2022 M&O" (see ECF No. 390[2])); and (2) related July 18, 2022 Order, denying Petitioner's application for a certificate of appealability (hereafter, the "Certification Denial Order" (see ECF No. 394)). (See Reconsideration Motion, ECF No. 395; Support Memo,[3] ECF No. 396; see also Motion to Amend, ECF No. 397.) The Government opposes the Reconsideration Motion. (See Opp'n, ECF No. 400.) For the reasons that follow, the Reconsider Motion is GRANTED, but upon reconsideration, the May 2022 Section 2255 M&O and Certification Denial Order are sustained and remain in full effect.

## BACKGROUND

I. Prior to Issuance of the May 2022 Section 2255 M&O

The Court assumes the parties' familiarity with the factual and procedural background of this case. The reader is referred to the summary of facts provided by the Second Circuit in its 2001 decision, see United States v. Baker, 262 F.3d 124 (2d Cir. 2001), and the October 2019 Memorandum and Order of Honorable Denis R. Hurley, who decided the first set of Petitioner's postconviction motions, see United States v. Baker, No.

---

[2] Also available on the Westlaw database. See United States v. Baker, No. 97-CR-0877, 2022 WL 1444239 (E.D.N.Y. May 6, 2022).

[3] The Court notes, that while labeled a "Motion", the document identified as ECF No. 396 is more accurately considered a memorandum in support of Petitioner's Reconsideration Motion. Herein, the Court treats ECF No. 396 as Petitioner's support memorandum and will cite it as such.

97-CR-0877, 2019 WL 4918104 (E.D.N.Y. Oct. 4, 2019). Moreover, Judge Hurley was the presiding judge who issued the May 2022 Section 2255 M&O, which is the subject of the instance Reconsideration Motion. For convenience, the Court reiterates the background provided by Judge Hurley, which is incorporated by reference herein:

> Baker and his mother Rosie Baker ("Rosie") devised a scheme to defraud the government though a Brooklyn nonprofit for Medicaid services where Rosie was the director. The two diverted funds from the nonprofit's budget via kick-backs for certain medical procedures and via self-dealing rental and service contracts between the nonprofit and entities owned by Rosie. Between 1988 and 1996, Rosie appropriated almost $2 million from the nonprofit for her personal benefit.
> The fraudulent scheme also involved Dr. Daniel Hodge, who provided medical services to the nonprofit's employees and paid kick-backs to Rosie. He and Rosie were romantically involved, but their relationship deteriorated when Dr. Hodge told police where Baker hid after Baker shot at a contractor renovating the nonprofit's office. Rosie threatened to kill Dr. Hodge, and Dr. Hodge threatened to go to the police with evidence of their fraud if she did not pay him money she owed. Dr. Hodge eventually sued Rosie in New York State court to collect those funds.
> Rosie ultimately asked a former boyfriend—also involved in the fraud—to kill Dr. Hodge. He declined, and Rosie responded that she would get Baker to arrange it. Baker shot and killed Dr. Hodge himself; Rosie later told her former boyfriend that Baker made it look like a robbery.
> On July 29, 1998, a jury convicted Baker on[:] one count of conspiracy to commit murder with the intent to obstruct justice in violation of 18 U.S.C. § 371 (Count 1); one

count of murder with intent to obstruct justice in violation of 18 U.S.C. § 1512(a)(1) (Count 2); one count of conspiracy to use a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(o) (Count 3); one count of use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count 4); and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k), § 924(a)(1)(B) (Count 6). Baker also pled guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 286.

The Honorable Jacob Mishler sentenced Baker to life imprisonment for murder, conspiracy to commit murder, and conspiracy to use a firearm; 46 months concurrent for conspiracy to defraud; 60 months consecutive for use of a firearm; 78 months concurrent for possession of a firearm with an obliterated serial number; and ordered Baker to pay $1,926,576.00 in restitution to the New York City Human Resources Administration.

On appeal, the Second Circuit held that Judge Mishler's instructions permitted the jury to convict Baker on Count 2 "without finding that the government had proved beyond a reasonable doubt every element of the crime of murder." 262 F.3d at 133. The Circuit vacated the sentence and remanded to the District Court for resentencing. The case was then reassigned to [Judge Hurley] because Judge Mishler had passed away in the interim.

[Judge Hurley] resentenced Baker to 5 years' imprisonment on Count 1; 10 years' imprisonment on Count 2 under the lesser included offense of obstruction of justice through physical force; 20 years' imprisonment on Count 3; 5 years' imprisonment on Count 4; 5 years' imprisonment on Count 6; and 5 years' imprisonment for conspiracy to defraud the United States. See Am. Judgment. . . [ECF No. 280]. All counts run consecutively for a total of 50 years' imprisonment.

Since his conviction, Baker has made several motions for postconviction relief. On

Page 4 of 20

> September 8, 2015, for example, Baker filed a § 2255 petition alleging ineffective assistance of counsel. [ECF No. 307]. On September 24, 2019, Baker filed an application with the Second Circuit for leave to file the instant habeas petition -- calling it a second or successive § 2255 petition even though this Court had not yet ruled on the first one. [ECF No. 316]. This Court denied Baker's first [Section 2255] petition on October 4, 2019. [ECF No. 339]. Then, on July 14, 2020, the Second Circuit denied Baker's application to file the instant "second" petition as unnecessary and transferred it to this Court "for whatever further action the district court finds appropriate, as if it had been filed directly in the district court." [(See ECF No. 353 (2d Cir. Certified Order); ECF No. 357 (same); ECF No. 354 (Davis-based habeas petition transferred from the Second Circuit.)]

Baker, 2022 WL 1444239, at *1-2; (see also May 2022 M&O at 1-4 (same).)

## II. The May 2022 Section 2255 M&O

Judge Hurley underscored Petitioner's successive, Davis-based Section 2255 petition sought the vacatur of his Section 924 firearm convictions, i.e., Count 3, finding Petitioner violated 18 U.S.C. § 924(o) and for which the Court sentenced him to 20 years' imprisonment, and Count 4, finding Petitioner violated 18 U.S.C. § 924(c) and for which the Court sentenced him to five years' imprisonment. Id. at *2; (see also May 2022 M&O at 4). According to Petitioner, the predicate offenses for his Section 924 firearm counts were not "crimes of violence" since they did

not require physical force.  See id.; (see also May 2022 M&O at 4-5).

Judge Hurley recognized that subsections (c) and (o) of Section 924, each require a predicate "crime of violence". Baker, 2022 WL 1444239, at *2; (see also May 2022 M&O at 5).  He further explained: "To assess whether the predicate offenses underlying Baker's § 924 convictions are 'crimes of violence,' the Court must identify their elements."  Id. at *3; (see also May 2022 M&O at 6).  Judge Hurley continued, elucidating that courts are required to take a "categorical approach" to identifying the minimum criminal conduct necessary for conviction under the applicable predicate statute.  Id.; (see also May 2022 M&O at 6-7).

> If "reality, logic, and precedent" illustrate "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," then §§ 924(c) and (o) do not apply.  Otherwise, the predicate offense reflects a crime of violence, and §§ 924(c) and (o) apply.

Id. (citing United States v. Hill, 890 F.3d 51, 56 (2d Cir. 2018) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007))); (see also May 2022 M&O at 7).  With that explication, Judge Hurley applied the law to Petitioner's Davis-based claims, examining, in reverse order, the predicate counts--Counts 1 and 2--to Petitioner's Section 924 firearm counts--Counts 3 and 4.  See id.

at *4; (see also May 2022 M&O Order at 7-11 (re: Count 2), and at 11 (re: Count 1)).

As to Count 2 Serving as a Predicate Count: Judge Hurley ruled Petitioner's "conviction on Count 2 to reflect a violation of § 1512(b)", which was a lesser-included offense of using physical force—as opposed to murder--to prevent Dr. Hodge from communicating to a law enforcement officer or a judge information relating to the commission of a federal offense. Id. at *4; (see also May 2022 Order at 8). Then, because Section 1512(b) was a divisible statute, Judge Hurley employed the applicable "modified categorical approach to determine the § 1512(b) crime for which the jury convicted Baker", which also required him to review the jury instructions given at Petitioner's trial. Id. at *5; (see also May 2022 M&O at 10). In doing so, Judge Hurley concluded "the jury convicted Baker on Count 2 of violating § 1512(b)(3) via the use of physical force", which could not be accomplished without "the use, attempted use, or threatened use of physical force", thereby rendering the crime of which Petitioner was convicted under Count 2 as a crime of violence, which, in turn, is a constitutional predicate for Petitioner's Section 924 convictions. Id. at *5-6; (see also May 2022 M&O at 10-11).

As to Count 1 Serving as a Predicate Count: Because the Government "d[id] not contend Baker's 18 U.S.C. § 371 conviction for conspiracy to commit murder with intent to obstruct justice

Page 7 of 20

reflect[ed] a 'crime of violence'", Judge Hurley declined to reach that issue. Id. at *6; (see also May 2022 M&O at 11). Instead, he "assume[d], without deciding, that conspiracy to commit murder with the intent to obstruct justice is not a 'crime of violence' under § 924." Id. (citing Abrue v. United States, No. 16-CV-5052, at 3 n.6 (S.D.N.Y. Aug. 7, 2020)); (see also May 2022 M&O at 11).

Given Judge Hurley's mixed finding, he then addressed what occurs when a defendant has Section 924 convictions which arise from one valid and one invalid predicate conviction. See id. at *6-7; (see also May 2022 M&O at 11-13). The Judge instructed: "Where a jury is instructed on both valid and invalid predicate offenses, the conviction stands if the verdict undoubtedly rests on a valid . . . predicate." Id. (quoting Sessa v. United States, No. 92-CR-0351, 2020 WL 3451657, at *3 (E.D.N.Y. June 24, 2020) (citation modified)) (collecting cases); (see also May 2022 M&O at 11-12). Given Judge Mishler's jury instructions on Counts 3 and 4, wherein the Judge instructed that the subject "crime of violence" was the murder of Dr. Hodge,[4] and the jury found Petitioner guilty on both those Counts, Judge Hurley found, "[t]he verdict undoubtedly rested the § 924 convictions on the act of murdering Dr. Hodge," which "act implicates Count 2, the valid

---

[4] Indeed, as Judge Hurley also wrote: "Judge Mishler did not instruct the jury on Counts 3 and 4 with reference to any conspiracy to murder." Id. at *6; (see also May 2022 M&O at 13).

predicate". Id. at *6; (see also May 2022 M&O at 12-13). Hence, Petitioner's Section "924 convictions rested on a valid 'crime of violence' predicate" and were not unconstitutional. Id. at *7; (see also May 2022 M&O at 13). Thus, Petitioner's Davis-based Section 2255 habeas petition was denied. See id.; (see also May 2022 M&O at 13).

III. The Certification Denial Order

After the May 2022 Section 2255 M&O was issued, the undersigned was reassigned this case. (See Case Docket, July 7, 2022 Reassignment (docket text).) Thereafter, on July 18, 2022, this Court issued the corresponding Certification Denial Order, which is also under consideration herein. In doing so, it rejected Petitioner's two claims: the contention that Petitioner's Section 924 convictions hypothetically could have been predicated on corrupt persuasion findings (see Certification Denial Order at 3-4); and, the assertion that there was an impermissible constructive amendment of the Indictment in violation of the Fifth Amendment as to Count 2, the witness-tampering count (see id. at 4-5). Moreover, as to Petitioner's second claim, the Court elucidated it was under no obligation to even consider it as it was raised for the first time in Petitioner's counseled reply. (See id. at 5.) In sum, this Court concurred with Judge Hurley's consideration of Plaintiff's claims, i.e., they were without merit. (See Certification Denial order at 2-3, 5.) Hence, because Petitioner

had not made a substantial showing of the denial of a constitutional right (see id. at 2-3, 5), this Court found there was "no legitimate basis to issue a Certificate of Appealability." (Id. at 3.)

IV. Subsequent Procedural History

In the face of Judge Hurley's denial of Petitioner's Davis-based Section 2255 motion and this Court's denial of Petitioner's application for a Certificate of Appealability, Petitioner now asks this Court to reconsider both denials asserting his conviction on Count 2 is not a "crime of violence" because Section 1512(b)(3) can be violated by "attempting" to cause physical force. (Reconsideration Motion at 2.) He premises his argument upon the Supreme Court's 2022 decision in United States v. Taylor, wherein the Supreme Court ruled attempted Hobbs Act Robbery is not a "crime of violence" and, therefore cannot serve as a predicate to a Section 924 conviction. (See id. at 3; see also Support Memo, ECF No. 396; Motion to Amend, ECF No. 397, at 1); see also United States v. Taylor, 596 U.S. 845, 142 S. Ct. 2015 (2022). Thus, given his interpretation of Taylor, Petitioner asks the Court to "vacate, set aside, or correct his convictions and sentences in Count[s] Three and Four." (Support Memo at 11.)

Petitioner further requested to amend his Reconsideration Motion to include the additional argument that his conviction on Count 6 is unconstitutional in light of the Supreme

Page 10 of 20

Court's 2022 Bruen decision. (See Motion to Amend at 2-3.) The crux of Petitioner's Count-6-unconstitutionality argument is that there is no Second Amendment historical context for finding the possession of a gun with an obliterated serial number to be illegal; therefore, such a statute is unconstitutional. (See id. at 3.) Petitioner relies upon a 2022 district court case from the Southern District of Western Virginia in further support of this new argument, i.e., United States v. Price, No. 22-CR-0097, 2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022). (See id. at 3-4.)

The Court granted Petitioner's Motion to Amend. (See Nov. 9, 2022 Elec. Order.) Petitioner was informed the Court would consider his new argument raised in the Motion to Amend, but no further briefing would be considered on same. (See id.)

The Government was afforded the opportunity to respond to both Petitioner's Reconsideration Motion and the new Bruen-based argument raised in Petitioner's Motion to Amend. (See id.) It did so, refuting both Petitioner's Taylor-based argument and Bruen-based argument; the Government's opposition was filed December 5, 2022. (See Opp'n, ECF No. 400.)

DISCUSSION

I. Applicable Law

While the pleading of pro se litigants are generally entitled to liberal construction and "should be read 'to raise the strongest arguments that they suggest,'" United States v.

Rodriguez, No. 93-CR-0549, 2021 WL 2444564, at *1 (S.D.N.Y. June 15, 2021) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001); further citation omitted), "[r]econsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Id. (quoting In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011); further citation omitted). The reconsideration standard is well-settled as succinctly reiterated by District Judge John F. Keenan of the Southern District of New York:

> Borrowing from the civil context, the legal standard governing criminal motions for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. Compelling reasons for granting a motion for reconsideration are limited to an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. A motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.

Rodriguez, 2021 WL 2444564, at *1 (citation modified); see also Stone v. Theatrical Inv. Corp., 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (observing a motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been

previously advanced" (quotation marks omitted)). "The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court." Hadid v. City of N.Y., 182 F.Supp.3d 4, 13 (E.D.N.Y., 2016) (quoting Murphy v. First Reliance Standard Life Ins. Co., No. 08-CV-3603, 2010 WL 2243356, at *3 (E.D.N.Y. June 1, 2010); internal quotation marks omitted; further citation omitted).

II. Application

Upon the record presented, given Petitioner's pro se status and that he is relying upon "new" Supreme Court cases, and in its discretion, the Court grants Petitioner's Reconsideration Motion. Nonetheless, for the reasons discussed herein, upon reconsideration, the Court concludes there is no basis to disturb Judge Hurley's May 2022 Section 2255 M&O or this Court's Certification Denial Order; therefore, both rulings are sustained and remain in full effect.

A. *Taylor* and Count 2 as a Valid Predicate

Petitioner's reliance upon Taylor is misplaced. As the Second Circuit explained:

> [In Taylor,] the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under the elements clause of section 924(c). Taylor, 142 S. Ct. at 2021. That is because one element of completed Hobbs Act robbery is that the defendant must take property "by means of actual or threatened force." Id. at 2020 (quoting 18 U.S.C. § 1951(b)) (emphasis added). It follows then

Page 13 of 20

> that attempted Hobbs Act robbery can be committed through the <u>attempted threat of force</u> -- which need not involve the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A), as is required for a section 924(c) conviction under the elements clause, see <u>Taylor</u>, 142 S. Ct. at 2021.

<u>United States v. Pastore</u>, 83 F.4th 113, 120-21 (2d Cir. 2023). The <u>Pastore</u> Court rejected a broad application of <u>Taylor</u>, since <u>Taylor</u> does not hold, categorically, that all attempt crimes are not crimes of violence. See id. at 121 (collecting cases, including <u>Doresy v. United States</u>, 76 F.4th 1277, 1282-84 (9th Cir. 2023) (holding witness tampering by "attempt[ing] to kill another person" under 18 U.S.C. § 1512(a)(1), like "attempted first-degree murder under Washington state law," constitutes a crime of violence)). The Second Circuit is not alone; as the Eighth Circuit recently and aptly stated: "The focus in <u>Taylor</u> was whether the term 'threatened use of force' encompasses an attempted threat. The [Supreme] Court's conclusion <u>was narrow</u>—a crime of violence does not exist when an offense only requires an attempt to threaten." <u>Rose v. United States</u>, -- F.4th --, 2025 WL 2488640, at *2 (8th Cir. Aug. 29, 2025) (citing <u>Taylor</u>, 596 U.S. at 851-52, 860, 142 S. Ct. 2015) (emphasis added).

In <u>Pastore</u>, the underlying predicate crime was second-degree murder, which the Second Circuit held could "not be committed through the mere threat of force, and must instead

involve the actual use of force." 83 F.4th at 121. Relatedly, the valid underlying predicate crime in the instant case, i.e., Count 2, witness-tampering by using or attempting to use physical force, could not have been committed through a mere threat of force. Likewise, "where a crime of violence requires the use of physical force . . . the corresponding attempt to commit that crime necessarily involves the attempted use of force." Feliz v. United States, 632 F. Supp. 3d 294, 302 (S.D.N.Y. 2022) (quoting United States v. Taylor, 979 F.3d 203, 209 (4th Cir. 2020, aff'd, 596 U.S. 845 (2022)). Moreover, as Judge Mishler instructed the jury on Count 2: "The first element the [G]overnment must prove beyond a reasonable doubt is that [Petitioner] used physical force or attempted to do so. Physical force is self-explanatory. In this case, the murder of Dr. Daniel Hodge constitutes physical force." (Jury Instructions Tr., Ex. A (ECF No. 366-1), at 2303, attached to Gov't Opp'n of Petitioner's Davis-based Section 2255 Petition (ECF No. 366) (emphasis added).) Accordingly, Petitioner's conviction on Count 2 is more than legally sufficient proof that he committed a predicate crime of violence supporting his Section 924 firearm convictions. See, e.g., Osborne v. Unites States, No. 14-CR-0264, 2022 WL 1693668, at *7-8 (E.D.N.Y. May 26, 2022) (denying Section 2255 habeas relief; finding conviction of crime of violence was more than legally sufficient proof petitioner committed a crime of violence, which could serve as predicate to

Section 924(c) conviction). Hence, as the Government astutely argues, upon the record of this case: "Petitioner's claim that it was 'legal error' under Taylor to allow 'the jury to convict him without finding actual physical force or intimidation beyond a reasonable doubt' lacks merit and cannot serve as a basis for relief." (Opp'n at 2 (quoting Support Memo at 10).) This Court agrees; Taylor does not change the Court's consideration of Petitioner's witness-tampering conviction under Count 2; using the applicable modified categorial approach, it remains a "crime of violence" supporting Petitioner's Section 924 convictions. See, e.g., United States v. Jordan, No. 19-3032-CR(L), 2024 WL 445000, at *1, *4 (2d Cir. Feb. 6, 2024). Thus, there is no need to set aside Petitioner's convictions on Counts 3 or 4.

    B.    *Bruen*, *Price*, and Count 6

The Government accurately summarizes the Bruen Court's Second Amendment test:

> In Bruen, the Supreme Court elaborated on the standard for determining whether a firearm regulation is constitutional under the Second Amendment. To make this assessment, a court must engage in a two-prong analysis. First, the court must determine whether "the Second Amendment's plain text cover's an individual's conduct." 142 S. Ct. at 2126. If it does not, the analysis ends, and the [G]overnment's regulation is valid. If the conduct at issue is covered by the Amendment's text, however, the [G]overnment must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only if a firearm regulation is

> consistent with this historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's protections. Id.

(Opp'n at 3); see also United States v. Irvin, No. 24-CR-0449, 2025 WL 2391803, at *2 (E.D.N.Y. Aug. 18, 2025) (discussing two-prong Bruen analysis; explaining "the Second Circuit has explained 'that history is relevant only if the Second Amendment's plain text covers an individual's conduct, and this threshold inquiry requires courts to consider,' among other things, 'whether the weapon concerned is in common use'" (quoting Antonyuk v. James, 120 F.4th 491 981 (2d Cir. 2024), cert. denied, 145 S. Ct. 1900 (2025) (emphasis added) (further citation omitted)). Applying the Bruen two-prong analysis here, Petitioner's constitutional challenge fails. As the Government aptly asserts: "[T]he [P]etitioner's conviction under § 922(k) was not infringing on [his] Second Amendment rights—as possession of a firearm with an obliterated serial number for use in the attempted murder of another is clearly not for 'self-defense'—and § 922(k) is clearly consistent with other reasonable and historically appropriate regulations of firearms." (Opp'n at 6.)  This Court concurs; Petitioner's possession of a defaced firearm does not fall within the Second Circuit's plain text; thus, the Court need not consider

the Nation's historical tradition of firearm regulation.[5]  At bottom, Petitioner's reliance upon Bruen is untenable.

Further, Petitioner's reliance upon the Southern District of West Virginia's Price decision in support of his position that his Count 6 conviction should be vacated is patently unavailing in light of the Fourth Circuit's en banc reversal of that decision.  See United States v. Price, 111 F.4th 392 (4th Cir. 2024 (en banc), cert. denied, 145 S. Ct. 1891 (2025).  Indeed, in recently finding Section 922(k)—the statute upon which the subject Count 6 rests—to be constitutional, Judge Allyne R. Ross of this District specifically "agree[d] with the Fourth Circuit that firearms with obliterated serial numbers fall outside the scope of the Second Amendment—i.e., that they are not weapons that are in common use for lawful purposes."  Irvin, 2025 WL 2391803, at *2 (citing Price, 111 F.4th at 406-08).  Continuing to rely upon Price, Judge Ross also stated:

> There exists no "common-sense reason for a law-abiding citizen to want to use a firearm with an obliterated serial number for

---

[5] Nonetheless, for substantially the same reasons articulated by Judge Ross in Irvin: "Because the only conceivable purpose of preferring a defaced firearm is to conceal its use from law enforcement, § 922(k) falls comfortably within our nation's tradition of regulating those 'weapon[s] more appealing to those who intend to wield the firearm for unlawful use.'"  2025 WL 2391803, at *2 (quoting United States v. Rush, 130 F.4th 633, 643 (7th Cir. 2025)).  In other words, and as stated by the Government, "there are more than sufficient historical analogues for § 922(k) to pass muster . . . which the Supreme Court has said is the kind of law that is presumptively valid."  (Opp'n at 5.)

> self-defense, and there is no evidence before us that they are nonetheless commonly lawfully used." Id. at 408. Accordingly, such firearms "fall outside the scope of the Second Amendment's protection." Id.

Id. This Court agrees with Judge Ross and, like Judge Ross, finds persuasive the rationale of the Fourth Circuit Price Court, which rationale it adopts herein. Therefore, finding Section 922(k) to be constitutional, the Court rejects Petitioner's Bruen-based argument in support of setting aside his Count 6 conviction.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Petitioner's Reconsider Motion (ECF No. 395) is GRANTED;

**IT IS FURTHER ORDERED** that, upon reconsideration of Judge Hurley's May 2022 Section 2255 M&O (ECF No. 390) and this Court's Certification Denial Order (ECF No. 394), in light of Taylor and Bruen, both the M&O and Order are sustained and, thereby, remain in full force and effect;

**IT IS FURTHER ORDERED** that, because there can be no debate among reasonable jurists that Petitioner is not entitled to habeas relief, the Court does not issue a Certificate of Appealability, see 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); and (2) certifies that any appeal from this Order would not be taken in good faith; thus, in forma pauperis status is DENIED for the purpose of any

appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum & Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September 12, 2025
         Central Islip, New York