```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------
UNITED STATES OF AMERICA,

-against-                              ORDER
                                       No. 97-CR-0877 (JS)
VANCE BAKER,

          Defendant.

-------------------------------
APPEARANCES

For Defendant:        Vance Baker, Pro Se
                      #48623-053
                      FCI Fort Dix
                      Federal Correctional Institution
                      P.O. Box 2000
                      Joint Base MDL, New Jersey  08640

For United States:    Charles N. Rose, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York  11722
```

SEYBERT, District Judge:

Currently before the Court is the pro se motion of Defendant Vance Baker ("Defendant") seeking a sentence reduction and compassionate release pursuant to the First Stepp Act ("FSA" or the "Act"), 18 U.S.C. § 3582(c)(1)(A) (hereafter, the "Motion").[1] (See ECF No. 412; see also Reply, ECF No. 415).

---

[1] Defendant's Motion uses the terminology "compassionate release". However, as stated by Judge Haight in United States v. Shakur, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020), that phrase is not one contained in the First Step Act of 2018; rather it is one coined by the courts to characterize a reduction in sentence pursuant to

The Government opposes the Motion.  (See Opp'n, ECF No. 413).  For the following reasons, the Motion is **DENIED**.

<u>RELEVANT BACKGROUND</u>

The Court presumes the reader's familiarity with the relevant background of this case.  See, e.g., <u>United States v. Baker</u>, 262 F.3d 124 (2d Cir. 2001) (affirming conviction; remanding for re-sentencing); <u>United States v. Baker</u>, No. 97-CR-0877, 2019 WL 4918104, Mem. & Order (ECF No. 339) (E.D.N.Y. Oct. 4, 2019) (rulings on Defendant's first set of postconviction motions); <u>United States v. Baker</u>, No. 97-CR-0877, 2022 WL 1444239, Mem. & Order (ECF No. 390) (E.D.N.Y. May 6, 2022) (denying Defendant's successive, <u>Davis</u>-based Section 2255 petition); <u>United States v. Baker</u>, No. 97-CR-0877, 2025 WL 2637679, Mem. & Order (ECF No. 419) (E.D.N.Y. Sept. 12, 2025) (upon reconsideration, adhering to denial of Defendant's successive, <u>Davis</u>-based Section 2255 petition); see also <u>United States v. Rosie Baker</u>, No. 97-CR-0877, Mem. & Order (ECF No. 384) (E.D.N.Y. Sept. 7, 2021) (hereafter, the "<u>September 2021 Order</u>") (in denying second compassionate release motion of Defendant's mother/co-defendant, Rosie Baker ("Rosie"), providing background, including detailed description of the crimes for which Rosie and Defendant were convicted), <u>aff'd</u>,

---

that Act.  See also <u>United States Brooker</u>, 976 F.3d 228, 237 (2d Cir. 2020) (stating the phrase "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

2022 WL 16557965 (2d Cir. Nov. 1, 2022); United States v. Rosie
Baker, No. 97-CR-0877, 2023 WL 5334426, Mem. & Order (ECF No. 403)
(E.D.N.Y. Aug. 18, 2023) (in denying Rosie's fourth compassionate
release motion, adopting Judge Hurley's comprehensive background
section articulated in his September 2021 Order).

As it did in August 2023, the Court again adopts and
incorporated by reference herein the "BACKGROUND" section
articulated by Honorable Denis R. Hurley in his September 2021
Order. See September 2021 Order at 2-8. In sum and for context,
the Court states briefly: Defendant was convicted of crimes
related to his role in the obstruction-of-justice murder
conspiracy and his cold-blooded killing of a former coconspirator,
i.e., Dr. Daniel Hodge ("Hodge"), in order to cover up the
multi-million-dollar health care fraud scheme coordinated by his
mother/codefendant, Rosie. Indeed, Defendant killed Hodge
"execution style by two gunshot wounds to his upper back, fired
from a revolver at point-blank range." Id. at 3. And, as relevant
to the instant Motion:

> The Honorable Jacob Mishler sentenced
> Baker to life imprisonment for murder,
> conspiracy to commit murder, and conspiracy to
> use a firearm; 46 months concurrent for
> conspiracy to defraud; 60 months consecutive
> for use of a firearm; 78 months concurrent for
> possession of a firearm with an obliterated
> serial number; and ordered Baker to pay
> $1,926,576.00 in restitution to the New York
> City Human Resources Administration.

On appeal, the Second Circuit held that
Judge Mishler's instructions permitted the
jury to convict Baker on Count 2 "without
finding that the [G]overnment had proved
beyond a reasonable doubt every element of the
crime of murder." 262 F.3d at 133. The
Circuit vacated the sentence and remanded to
the District Court for resentencing. The case
was then reassigned to [Judge Hurley on May
24, 2002,] because Judge Mishler had passed
away in the interim.

[Judge Hurley] resentenced Baker to 5
years' imprisonment on Count 1; 10 years'
imprisonment on Count 2 under the lesser
included offense of obstruction of justice
through physical force; 20 years' imprisonment
on Count 3; 5 years' imprisonment on Count 4;
5 years' imprisonment on Count 6; and 5 years'
imprisonment for conspiracy to defraud the
United States. See Am. Judgment. . . [ECF No.
280]. All counts run consecutively for a
total of 50 years' imprisonment.

Baker, 2022 WL 1444239, at *1-2; (see also Am. Judgment, ECF No.

280).

Defendant has been incarcerated for almost 28 years,

since October 23, 1997. (See Motion at ECF p. 17.) He was

previously housed in USP Cannan, a high security penitentiary

located in Pennsylvania, and FCI Lewisburg, a medium security

correctional facility located in Pennsylvania. (See Motion at ECF

p.18.) Defendant is currently housed in FCI Fort Dix, a low

security correctional facility. See Fed. Bureau of Prisons

("BOP"): Find an Inmate, Vance Baker (BOP Reg. No. 48623-053),

https://www.bop.gov/inmateloc/ (last visited Sept. 23, 2025)

(identifying Defendant's location as "Fort Dix FCI"). Defendant

is currently 54 years old and has an anticipated release date of May 9, 2040.  See id.

On February 24, 2025, Defendant moved for a sentence reduction; he contends a sentence reduction is warranted given: his purported unusually long sentence; the need to help his sisters care for their mother, Rosie; his remorse and rehabilitative efforts; and, the unusually harsh conditions he has endured.  (See Motion at ECF pp. 17-18.)  On May 2, 2025, the Government filed its Opposition.  Defendant replied on June 2, 2025.  (See ECF 415.)  With his Reply, Defendant included, inter alia:[2] a letter of apology (see id. at ECF p.4); two BOP Justification Reports (see id. at ECF pp.3, 15); letters of support from various family members (see id. at ECF p.18 (daughter Mia King); ECF p.19 (fiancé Michele King); ECF p.21 (sister Valeri Baker-Percival); ECF p.24 (daughter Vanisha Baker); ECF p.25 (sister Veronica Baker); and ECF p.26 (niece Veania Baker)); a family friend's letter of support (see id. at ECF p.20); and two offers of employment (see id. at ECF pp.22, 23).  Defendant's Motion is ripe for decision.

---

[2]   In addition, Defendant submitted his:  "Inmate History (PT) other Program format"; "Inmate Education Data"; "Summary Reentry Plan Progress Report"; and "Individualized Needs Plan Progress Report".  (See, e.g., Reply at ECF p.2.)

DISCUSSION

I.    Applicable Law

        "A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14ed, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)); see also United States v. Santana, No. 15-CR-0457, 2025 WL 1940370, at *2 (E.D.N.Y. July 15, 2025) (same). The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction."  United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); see also United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025)

(same). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72–73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely on applying Section 3553(a) Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting Keitt).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are to consider whether a sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission", 18 U.S.C. § 3582(c)(1)(A); see also Guidelines § 1B1.13 (the "Policy Statement"), and whether the relevant Section 3553(a) Factors favor such a reduction. See United States v. Donato, No.

95-CR-0223, 2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[3] <u>see</u>

---

[3]  In <u>Donato</u>, Judge Azrack of this District explained:

> In 2020, the Second Circuit determined that
> the applicable policy statement—U.S.S.G.
> § 1B1.13—does not apply to motions for
> compassionate release filed by defendants
> because the statement's language referenced
> only motions filed by the Director of the
> Bureau of Prisons. <u>See United States v.
> Brooker</u>, 976 F.3d 228, 235-37 (2d Cir. 2020).
> [T]he Sentencing Commission has since amended
> the policy statement, such that it now
> explicitly covers motions for compassionate
> release brought by individual defendants. <u>See</u>
> U.S.S.G. § 1B1.13(a) ("Upon motion of <u>the
> Director</u> of the Bureau of Prisons or the
> <u>defendant</u>, . . . the court may reduce a term
> of imprisonment . . . .") (emphasis added).
> As a result, courts in this circuit have
> determined that "<u>Brooker</u> does not apply to the
> new version of Policy Statement 1B1.13 . . . .
> [and that] to grant a motion for compassionate
> release, a court must now . . . find that
> granting such relief is consistent with Policy
> Statement 1B1.13." <u>United States v. Feliz</u>,
> [No. 16-CR-0809,] 2023 WL 8275897, at *4
> (S.D.N.Y. Nov. 30, 2023) (quotation marks
> omitted); <u>see also United States v. Andrews</u>,
> [No. 01-CR-0450,] 2023 WL 8477993, at **2-5
> (S.D.N.Y. Dec. 7, 2023) (analyzing the recent
> amendments to Policy Statement 1B1.13 and
> applying it to a defendant's motion for
> compassionate release). Accordingly, the
> amended guidance from the Commission as to
> what constitutes extraordinary and compelling
> reasons now controls the analysis of a
> compassionate release petition, however
> initiated. <u>See generally</u> U.S. Sent'g Comm'n,
> Amendments to the Sentencing Guidelines, 88
> Fed. Reg. 28,254 (effective Nov. 1, 2023); <u>see
> also United States v. Lopez</u>, [No. 16-CR-0317,]
> 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

also <u>Keitt</u>, 21 F.4th at 71.  However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"  <u>United States v. Brooker</u>, 976 F.3d 228, 235–37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t); <u>see also</u> U.S.S.G. § 1B1.13(d).  Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."  <u>United States v. Davies</u>, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); <u>see also</u> <u>Pimentel</u>, 2025 WL 783730, at *2; <u>United States v. Jones</u>, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same).

"The defendant bears the burden of showing that the circumstances warrant a sentence reduction."  <u>United States v. Sellick</u>, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing <u>Jones</u>, 17 F.4th 371, 375 (2d Cir. 2021)); <u>see also</u> <u>United States v. Friedlander</u>, No.

---

Donato, 2024 WL 1513646, at n.10; <u>see also</u> <u>Feliz</u>, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in <u>United States v. Brooker</u>, 976 F.3d 228 (2020)").

20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022)
("A defendant 'bears the burden of showing that his release is
justified.'" (quoting United States v. Patterson, No. 06-CR-0080,
2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).  "A district
court's discretion in deciding a compassionate release motion—as
in all sentencing matters—is broad." Rodriguez, 147 F.4th at 222
(quoting Brooker, 976 F.3d at 237) (citation modified).

## II.  Application

### A.  Exhaustion

Defendant asserts he requested compassionate release
from the Warden of FCI Fort Dix; said request was both made to and
acknowledged by the Warden on January 14, 2025.  (See Motion at
ECF pp. 19-20.)  It appears Defendant has fulfilled his exhaustion
requirement, which the Government does not challenge.  (See Opp'n
at 2 n.3 (stating, "it appears that the defendant exhausted his
administrative remedies").)  Thus, "because the Government did not
raise an exhaustion defense, and 'directs its opposition entirely
at the other two prerequisites for compassionate release,' the
Court proceeds to consider the merits of Defendant's Motion."
United States v. Henriquez, No. 04-CR-0939, 2024 WL 4450851, at *3
(E.D.N.Y. Oct. 9, 2024) (quoting United States v. Romano, 707 F.
Supp. 3d 233, 237 (E.D.N.Y. 2023), and citing United States v.
Saladino, 7 F.4th 120, 123 (2d Cir. 2021)); see also United States
v. Diaz, No. 10-CR-0277, 2024 WL 3228347, at *2 (E.D.N.Y. June 27,

2024) (finding, where Government "d[id] not expressly raise an exhaustion defense," but "direct[ed] its opposition entirely at whether [defendant] states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release," court was free to consider merits of defendant's compassionate release motion (omitting internal quotations marks and citations)).

   B.   Extraordinary and Compelling Circumstances

       In addition to asserting he is entitled to compassionate release because he has been subjected to an "unusually long sentence" (id. at ECF pp.5, 17), Petitioner seeks compassionate release to help care for his sick, elderly mother, Rosie (see id. at 6, 18), and based upon his remorse, rehabilitation, and readiness to reintegrate into society (see id.). Generously read, Defendant's Motion also advances an additional ground for a sentence reduction, i.e., the alleged "unusually harsh" conditions of incarceration. (Id. at ECF p.18). For the reasons that follow, the Court finds Defendant has not presented extraordinary or compelling reasons to reduce his sentence.[4]

       [Proceed to next page.]

---

[4]  For the reasons discussed infra, the Court addresses the four grounds Defendant advances for compassionate release out of the order presented; it will assess Defendant's rehabilitation arguments last.

1.   Unusually Long Sentence

Defendant seeks a decreased sentence based upon Section 1B1.13(b)(6) of the Sentencing Guidelines Policy Statement (see Motion at ECF pp.5-6), which subsection of the Policy Statement describes an extraordinary and compelling reason for granting a sentence reduction; in full, subsection (b)(6) provides:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Defendant asserts the 50-year imprisonment sentence he received in 2002 was "before [when] Booker was mandatory" and now, "maybe the advisory guideline will produce a lower sentence". (Motion at ECF p.18 (emphasis added).)  More specifically, Defendant speculates if he were to be "sentenced today[,] the consecutive mandates of [§] 5G1.2(d) and cross reference of [§] 2A1.1 . . . might produce a lesser sentence." (Id.)  Further, in support of his argument, Defendant proffers three cases where courts granted sentence reductions involving "a heinous crime":

United States v. Russo, 643 F. Supp.3d 325 (E.D.N.Y. 2022); United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559 (E.D.N.Y. Apr. 10, 2023); and, United States v. Rodriguez, 492 F. Supp.3d 306 (S.D.N.Y. 2020).  (Id.; see also Reply at ECF p.2 (proffering additional cases for proposition that courts have reduced sentences in "cases with murder enhancements or murder conspiracy" convictions).)  Defendant recognizes subsection (b)(6) of the Policy Statement "only applies where such a change [in] law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time [the compassionate release] motion is filed and after full consideration of the defendants [sic] individualized circumstances."  (Reply at ECF p.2.)

In opposition, the Government argues Defendant's unusually-long-sentence argument is without merit for two reasons: first, Defendant's 50-year imprisonment sentence is not unusually long (see Opp'n at 3 (citing United States v. Riley, 777 F. Supp.3d 165 (S.D.N.Y. 2025)); and, second, said sentence is consistent with the 45-year sentence Rosie received, which sentence both Judge Hurly and the undersigned "already held was appropriate under the same basic relevant § 3553(a) factors." (Id. (citing United States v. Ellis, No. 96-CR-0100, 2020 WL 5802312 (E.D.N.Y. Sept. 29, 2020)).)  Additionally, the Government maintains, if Defendant were resentenced today, i.e., post-Booker, "the advisory

Guidelines range would be unchanged" with Defendant still subject to an adjusted offense level of 48 and a Criminal History Category of I, resulting in a Guidelines range of life imprisonment.  (See id.; see also id. at note 5 (noting Defendant's 2002 amended PSR "would still govern if the defendant was resentenced in connection with the present motion").)

Defendant has not meet his burden of establishing extraordinary and compelling reasons pursuant to subsection (b)(6) of the Policy Statement.  First, the Court finds Defendant's 50-year sentence is not unusually long, especially considering the heinous, cold-blooded murder Defendant committed in his attempt to obstruct justice; moreover, Defendant's sentence resulted from a compilation of charges, and the resulting aggregate sentence appropriately reflects the totality and seriousness of his offenses.  (See supra at 3-4 (delineating the counts upon which Defendant was sentenced); see also Reply at ECF p.2 (recognizing applicable life-sentence range)); compare, e.g., Riley, 777 F.Supp.3d at 170 (finding, where "sentence reflect[ed] the gravity of [defendant's] conduct, only part of which includes two murders in aid of racketeering, one accessory to murder of a third individual, and at least three conspiracies to commit murder in aid of racketeering, along with multiple firearms offenses and other serious offenses," defendant's life-plus-65-years sentence was not unusually long); see also, e.g., United States v. Santos,

No. 01-CR-0537, 2024 WL 4212024, at *3 (E.D.N.Y. Sept. 17, 2024) (finding, where defendant was convicted of two counts of intentional killing in furtherance of a criminal enterprise and one count of using a firearm during a crime of violence, a sentence of life in prison was not unusually long), reconsideration denied, 2024 WL 4424418 (E.D.N.Y. Oct. 4, 2024); United States v. Frias, No. 01-CR-0307, 2024 WL 5155128, at *1 (S.D.N.Y. Dec. 18, 2024) (finding defendant sentenced to life in prison for premeditated murder failed to show sentence "was an unusually long sentence for this offense"). Moreover, here, there would be no disparity, let alone a "gross" one, between the 50-year sentence Defendant is currently serving and the sentence likely to be imposed if Defendant were sentenced now, especially considering Defendant's individualized circumstances, since, as the Government aptly argues, the post-Booker advisory Guidelines range to which Defendant would be subjected continues to be a range of life imprisonment.[5]  See U.S.S.G., Ch. 5, Pt. A, Sent'g Table; cf. United States v. Rodriguez, No. 96-CR-0959, 2025 WL 212766, at *1-2

---

[5]  That calculus does not change even if the Court were to agree with Defendant that his Guidelines adjusted offense level is 43 and his Criminal History Category is I (see Reply at ECF p.2), since the advisory Guidelines range at that level and criminal history category remains at a range of life imprisonment.  See U.S.S.G., Ch. 5, Pt. A, Sent'g Table, available at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2024/Sentencing Table.pdf.  (At the time Defendant filed his Motion, the most current version of the Guidelines was the 2024 Guidelines Manual, which became effective on November 1, 2024.)

(S.D.N.Y. Jan. 26, 2025) (rejecting defendant's unusually-long-sentence argument where, post-<u>Booker</u>, defendant remained subject to a mandatory statutory term of life imprisonment; therefore, defendant did not present any potential disparity in sentencing). Relatedly, Defendant's 50-year sentence is substantially similar to the 45-year sentence imposed upon his co-defendant, Rosie.[6]  In sum, given the heinous nature of Defendant's cold-blooded, execution-style killing of Hodge, regardless of the average sentence for a "similar crime", together with consideration of the other offenses for which Defendant was convicted, Defendant's 50-year sentence is not an unusually long one.  <u>See</u> <u>Santos</u>, 2024 WL 4212024, at *3 (where defendant asserted he was subjected to unusually long sentence warranting compassionate release, rejecting defendant's argument based upon the average federal sentence for murder being approximately 20 years, because defendant's "crime was especially severe, and a life sentence reflect[ed] the seriousness of [defendant's] offense, regardless of the average sentence for a 'similar' crime").  Therefore, the Court finds Defendant's sentence, analyzed under Section § 1B1.13(b)(6), does not present an extraordinary and compelling reason to consider a sentence reduction.

---

[6]  And, as argued by the Government, Defendant's reliance upon <u>Russo</u>, <u>Monteleone</u>, and <u>Rodriguez</u> is unavailing since those cases are inapposite to his case and the arguments he advances.  (<u>See</u> Opp'n at 3, n6.)

2.    Caregiving Responsibilities

Defendant concedes his sisters are caring for their mother, Rosie.  (See Motion at ECF p.18.)  On that basis, alone, Defendant's caregiver rationale for compassionate release fails. Courts considering compassionate release to facilitate the provision of caregiving require evidence establishing the severity of the circumstances and showing that the defendant is the only person capable of taking care of the incapacitated relative.  See, e.g., U.S.S.G. § 1B1.13(b)(3)(C) (describing as an extraordinary and compelling reason, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" (emphasis added)); cf., e.g., United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003) (where defendant was not the only available caregiver for son, finding family circumstance was not extraordinary and compelling).

Recently, in rejecting a compassionate release motion, where the defendant asserted she was the only caregiver available to take care of her aging mother, this Court wrote:

> "Although [D]efendant's status as the 'only available caregiver' may constitute an extraordinary and compelling circumstance, see U.S.S.G. § 1B1.13(b)(3)(C), [defendant] has not made such a showing, which could require h[er] to provide an explanation and 'several sources of evidence' that [s]he was the only person available to care for her." United States v. Johnson, 754 F. Supp. 3d 305, 316 (E.D.N.Y. Oct. 17, 2024) (citing United States v. Sharma, No. 19-CR-0024, 2023 WL

4305054, at *3 (E.D.N.Y. June 30, 2023)); see
also United States v. Lindsey, No. 13-CR-0271,
2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021)
(finding, where defendant failed to meet
"several sources" burden claiming he was the
only available caregiver, family
circumstances did not constitute
extraordinary and compelling circumstances
warranting compassionate release); but cf.
United States v. Lisi, 440 F. Supp. 3d 246,
252 (S.D.N.Y. 2020) (finding evidence from
"several sources" indicating defendant was his
mother's only available caregiver to be an
extraordinary and compelling reason for
compassionate release). Instead, Defendant
offers little more than her "self-serving
statements"; this falls well-short of her
burden in establishing her claimed family
circumstances situation. See United States v.
Singh, No. 21-CR-0397, slip op. (ECF No. 204)
(E.D.N.Y. Dec. 1, 2023), aff'd, No. 23-8038,
2025 WL 763390, at *1 (2d Cir. Mar. 11, 2025)
(summary order). Moreover, even in one such
statement, Defendant concedes one of Mother's
grandsons "mostly stays in Dix Hills, NY with
his girlfriend" and "will stop in from time to
time, bringing [Mother] groceries, within his
ability to do so." (Reply at ¶ 8.) This
admission undercuts Defendant's claim that she
is the only available caregiver to Mother.
Compare, e.g., United States v. Messina, No.
11-CR-0031, 2024 WL 2853119, at *5 (E.D.N.Y.
June 4, 2024) (finding defendant was not the
only available caregiver, when "evidence
show[ed] that, although it has been a
challenge, a combination of family members
ha[d] been able to coordinate to respond to
[defendant's parent's] medical needs"). And,
in combination with the absence of "ample
evidence from several sources" that she is
Mother's sole caregiver, see Lindsey, 2021 WL
37688, at *3, Defendant has not established an
extraordinary and compelling reason for
release.

United States v. Pilitz, No. 17-CV-0053, 2025 WL 2324218, at *5

(E.D.N.Y. Aug. 12, 2025) (emphasis added).

Here, given his admission that Rosie is being cared for by his sisters, similar to Pilitz's concession that her son occasionally helps care for her mother, which concession undermined Pilitz's claim of being the only person available to be her mother's caregiver, Defendant has failed to establish he is the sole person available to care for his mother; thus, he is unable to establish his family circumstance as an extraordinary and compelling reason warranting a sentence reduction. See, e.g., United States v. Oladokun, No. 20-CR-0003, at *8 (S.D.N.Y. Sept. 10, 2025) (finding defendant did not present extraordinary and compelling reason for release where he had multiple siblings who were available to help care for their purportedly bedridden mother); see also United States v. Sanchez, No. 01-CR-0074, 2023 WL 7103277, at *6 (S.D.N.Y. Oct. 27, 2023) ("While the external commitments of [defendant]'s family members might make caretaking difficult, that is 'merely the inevitable circumstances families face when a family member is incarcerated,' not an extraordinary and compelling reason to reduce a sentence." (internal citations omitted)), aff'd, No. 23-7777, 2024 WL 4647668 (2d Cir. Nov. 1, 2024) (summary order).

    3.  Harsh Conditions

Defendant makes general, unsubstantiated complaints regarding the conditions to which he was exposed while housed at

FCI Lewisburg and USP Canaan.    (See Motion at ECF p. 18.)    He
contends, inter alia: "the conditions were extremely difficult
environments with regular lock down situations from violent
assaults on inmates and staff"; being exposed to "unforeseen
incidents like a salmonella" outbreak and "covid outbreaks"; and,
enduring a difficult environment due "just [to] lack of staff".[7]
(Id.)   Defendant argues continuing serving a sentence facing such
conditions "can be unusually harsh"; yet, he also appears to
concede they may be part of a just punishment.   (Id.)

        To the extent Defendant's harshness argument can be
attributed to the COVID-19 Pandemic, i.e., that the Pandemic has
made his incarceration more punitive than anticipated, this Court
has repeatedly stated:

        "[T]hese hardships do not set [him] apart from
        the rest of the BOP inmate population and
        therefore do not, alone, constitute
        extraordinary and compelling reasons for his
        release.'" United States v. Johnson, No. 98-
        CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar.
        31, 2021)); see also, e.g., United States v.
        Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5
        (E.D.N.Y. July 6, 2022) ("[T]he conditions of
        confinement during the pandemic [do not] give
        rise to extraordinary and compelling
        circumstances.    Although the Court
        acknowledges that 'the pandemic has made
        prison conditions harsher than usual, those
        are circumstances that all inmates have had to

---

[7]    Inexplicably, as there is nothing before the Court
substantiating that he was housed there, Defendant also complains
of an "ice storm that crippled Beaumont[,] Texas that locked us
down without running water for 10 days." (Id.)  Given the lack of
context, the Court declines to consider this claim.

> endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. See, e.g., United States v. Martinez, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)). Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release.

United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *7 (E.D.N.Y. Aug. 5, 2024); see also Santana, 2025 WL 1940370, at *4 (same); United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *6 (E.D.N.Y. Apr. 16, 2025) (same); United States v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *5 (E.D.N.Y. Nov. 14, 2024) (same); United States v. Hernandez, No. 04-CR-0939, 2024 WL 4450851, at *4 (E.D.N.Y. Oct. 9, 2024) (same); United States v. Moss, No. 14-CR-0147, 2024 WL 3718909, at *5 (E.D.N.Y. Aug. 7, 2024) (same);

United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *6 (E.D.N.Y. May 31, 2024) (same). Moreover, "[p]ost-COVID, it is well-established that 'generalized fear of contracting COVID-19 is insufficient to meet the demanding standard of 'extraordinary and compelling' reasons in light of stabilized conditions at' BOP facilities." Latney, 2025 WL 1126474, at *5-6 (quoting United States v. Gonzales, No. 15-CR-6085, 2023 WL 6386139, at *3 (W.D.N.Y. Oct. 2, 2023) (collecting cases)).

As to Defendant's other grounds he advances in support of his harshness argument, they are patently too vague to assess. Therefore, they are not viable to meet Defendant's burden of establishing an extraordinary and compelling reason warranting a sentence reduction. See Sellick, 2022 WL 16936829, at *1; Wagner, 2024 WL 2801981, at *4 (stating, where there was an absence of relevant information, court's ability to assess defendant's entitlement to compassionate release was stymied and, therefore, defendant failed to meet his burden in pursuing such relief (citing United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *3 (E.D.N.Y. Dec. 20, 2023)); Friedlander, 2022 WL 2305370, at *3.

4.  Rehabilitation Efforts

Recently, in denying a compassionate release motion where the defendant showed "significant strides in his rehabilitation", this Court, nonetheless, found the defendant's "commendable rehabilitation [wa]s not enough". Latney, 2025 WL

1126474, at *7.  So, too, is it in this case; Defendant's rehabilitation is not enough to establish an extraordinary and compelling reason warranting a sentence reduction.

In Latney, the defendant: presented evidence of maintaining familiar relationships; provided letters of support from a prison chaplain, an attorney, and fellow inmates; and, submitted a letter of contrition.[8]  See id. at *7-8.  While the Court found defendant Latney's rehabilitative efforts "laudable", his rehabilitation alone did not warrant a sentence reduction. Id. at *8.  Juxtaposed against Latney's efforts, Defendant's rehabilitative efforts require the same result.  In the instant case, Defendant has demonstrated: the maintenance of familial relationships; letters of support; and, other clear signs his incarceration has had extraordinary rehabilitative value.  Yet, as the Court explained in Latney, which explanation applies equally here:

> As the Government persuasively argue[d in opposing the granting of compassionate release]:
>
> [S]ince rehabilitation and "model prison conduct is expected" of federal inmates, the [D]efendant should not be granted compassionate release on this basis.  United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022); see also

---

[8]  Latney had a blemish-free disciplinary record while incarcerated.  See Latney, 2025 WL 1126474, at *8 n.3.  In comparison, Defendant asserts he "has one incident report in the last 13 years."  (Reply at ECF p.2.)

> United States v. Reyes, No. 20-3285,
> 2022 WL 1669388, at *1 (2d Cir. May
> 26, 2022) (summary order) (affirming
> compassionate release denial where
> district court "acknowledged [the
> defendant's] efforts toward
> rehabilitation, [but] nevertheless
> found that the [S]ection 3553(a)
> [F]actors weighed heavily against a
> sentence reduction" based on the
> defendant's conduct); United States v.
> Garcia, No. 19-CR-210 (CS), 2022 WL
> 672758, at *2 (S.D.N.Y. Mar. 7, 2022)
> ("Maintaining good conduct in prison
> is not uncommon, and indeed is
> expected.").

> The Court cannot disagree.

Id. at *8 (omitting internal citation).  Since "rehabilitation is

expected of a federal inmate" id. at *3; see also, e.g., Alvarez,

2020 WL 4904586, at *7 (recognizing "model prison conduct is

expected"), even though this Court considered Latney's

rehabilitation when deciding his compassionate release motion, it

was insufficient to meet his burden of showing extraordinary and

compelling circumstances.  See id.  The Court elucidated:

> Here, the only factor Latney is able to
> demonstrate as within the purview of being
> "extraordinary and compelling" is his
> rehabilitative efforts.  However, laudable as
> those efforts are -- and, the Court finds
> Latney's efforts are laudable in this instance
> -- it is also well-settled that the Court may
> not make an "extraordinary and compelling"
> finding based solely upon a defendant's
> rehabilitation.  See Brooker, 976 F.3d at 237-
> 38 ("The only statutory limit on what a court
> may consider to be extraordinary and
> compelling is that '[r]ehabilitation . . .
> alone shall not be considered an extraordinary
> and compelling reason.'") (citing 28 U.S.C.

§ 994(t); emphasis added in Brooker); cf., e.g., United States v. Russo, 643 F. Supp. 3d 325, 332 ("[R]ehabilitation alone would not suffice as extraordinary and compelling, but it weighs in [defendant's] favor alongside consideration of multiple other factors."). Thus, because the Court finds Defendant's other proffered reasons for granting his Motion are neither extraordinary nor compelling, the weight his rehabilitation efforts might have added to the Court's calculus of the totality of the circumstances is without effect; hence, there is no ground to reduce Defendant's sentence.

Id. Once more, for the reasons articulated in Latney, which reasons the Court incorporates by reference herein, the same holds true in the present case; because the Court finds Defendant's other proffered reasons for granting him compassionate release--i.e., an unusually long sentence; the need to help his sisters with their mother's care; and harsh conditions of confinement--are neither extraordinary nor compelling, the weight of his rehabilitation efforts, while those efforts may be laudable, is without effect.

-*-*-*-

At bottom, Defendant has not met his burden of establishing any extraordinary and compelling reasons warranting reducing his sentence; on this basis alone, there is are no grounds to grant his Motion for compassionate release.

C.   Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors,

without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"  Jones, 2023 WL 8613867, at *2; see also Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).  Moreover, the Second Circuit has recently reiterated: "[A] district court has broad discretion in weighing the § 3553(a) factors in the context of a motion for compassionate release, and [the appellate court] owe[s] that analysis considerable deference." Rodriguez, 2025 WL 2301077, at *4 (citing Keitt, 21 F.4th at 72, and United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (en banc)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

In addressing the Section 3553(a) Factors, Defendant focuses predominantly upon his rehabilitative efforts. (See Reply at Motion at 8.) He also "admits that [his] crime was horrible and recognizes the seriousness of the offense." (Id.) Nonetheless, while claiming he "takes full responsibility and is aware of the mistakes he made 28 years ago", Defendant argues that "28 years is substantial and adequately reflects the gravity of the crime", as well as provides sufficient deterrence to others. (Id. at 1, 2.)

In opposition, the Government argues: "Both Judge Hurley and this Court have already determined that the sentencing factors at issue in the first [four[9]] Rosie Baker compassionate release motions warranted their denial and such factors are amplified here given that the [D]efendant was actually the person who killed [Hodge] in cold blood in order to obstruct justice." (Opp'n at 4 (collecting cases).) According to the Government, releasing Defendant after serving a little more than half his sentence "would undermine respect for the law and fail to provide just punishment given the severity of the offence." (Id. at 5.) And, contrary to Rosie (given her dementia), specific deterrence

---

[9] For clarity the Court notes, while the Government refers to three compassionate release motions filed by Rosie, there were four such motions. See Baker, 2023 WL 5334426, at *1; September 2021 Order at 5-7. However, that clarification has no implication upon the Court's present consideration of the Section 3553(a) Factors.

is still relevant as to Defendant and warrants he serve his entire sentence.  (See id.)  The Court agrees.

Like Judge Hurley did when denying Rosie's third compassionate release motion, in the present case, considering the relevant Section 3553(a) Factors, this Court finds the seriousness of Defendant's offense is the factor weighing most heavily in favor of denying his compassionate release Motion.  See September 2021 Order at 12; see also United States v. Duarte, No. 99-CR-0192, 2025 WL 1434886, *8 (S.D.N.Y. May 19, 2025) (finding "the heinousness and gravity of [defendant's] criminal conduct", i.e., ordering the execution of a DEA informant to prevent informant from testifying against defendant, was the Section 3553(a) Factor weighing heavily against defendant's release; stating the "selfishness and violent nature of [defendant's] crime merits life-long imprisonment"); United States v. Marmolejos, No. 99-CR-1048, 2021 WL 3862851, *5 (S.D.N.Y. Aug. 30, 2021) (Chen, J., sitting by designation) (in denying motion to reduce a life sentence, where offense was murder-for-hire, not a crime of passion, stating it was "primarily the 'nature and circumstances' of Marmolejos's offenses, [that] weigh[ed] against release or sentence reduction" and that granting a reduction would not reflect the seriousness of the offense); cf. Santos, 2024 WL 4212024, at *4 (denying compassionate release motion of hired hit-man who killed the "wrong" people, one of whom was a 14-year-old, where,

considering the Section 3553(a) Factors, inter alia, the court found there was considerable risk that a sentence reduction would "not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public" (citation omitted)).

Further embracing Judge Hurley's consideration of the Section 3553(a) Factors, this Court reiterates: "[T]he nature and circumstances of the offense are heinous. This was not a crime of passion but a cold-blooded murder. [Rosie] orchestrated a murder for hire to prevent discovery of years-long Medicaid fraud. Undeterred by the refusal of her former boyfriend [] to commit the murder for her, she then approached her son," September 2021 Order at 10, who, instead of hiring the hitman Rosie envisioned, readily undertook murdering Hodge. See id. at 3. In doing so:

> On June 26, 1997, [Defendant] and an accomplice waited for [Hodge] at his residence. Upon [Hodge]'s return and while [Hodge] was still in his car, [Defendant] killed [Hodge] execution style by two gunshot wounds to his upper back, fired from a revolver at point-blank range. [Defendant] then took [Hodge]'s briefcase containing a laptop and then left with his accomplice.

Id. at 3. Additionally, Defendant attempted to make the murderous encounter look like a robbery. See id. Thus, just as Rosie "did not hesitate to take Dr. Hodge from his children and his extended family to prevent discovery of her criminal fraud", id. at 11, the same holds true for Defendant. In turn, just like Judge Hurley

finding "[r]educing [Rosie's] sentence would not reflect the seriousness of the offense," this Court concludes that finding likewise applies to Defendant, Rosie's ready-and-willing co-defendant and the actual murderer of Hodge. See Marmolejos, 2021 WL 3862851, *5 (denying compassionate release motion because granting a reduction would not reflect the seriousness of the offense); United States v. Frias, No. 01-CR-0307, 2020 WL 6058067, *3 (S.D.N.Y. Oct. 14, 2020) (in denying compassionate release motion, finding "application of the [Section] 3553(a) factors cripples [defendant's] request and outweighs any justification for early-release", explaining "Frias's offense conduct is among the most serious and reprehensible the Court has ever encountered: Frias deliberately and brutally organized and helped murder Lobo").

Continuing, in denying Rosie's third compassionate release motion, Judge Hurley explained, "It is appropriate for the Court to consider how a reduction in sentence would undermine the aims of the Court's original sentence." September 2021 Order at 11 (citing United States v. Roney, 833 F. App'x 850, 853-54 (2d Cir. 2020)). In doing so, Judge Hurley determined "[t]he need to provide just punishment for the offense . . . counsels against granting [compassionate release]; it would result in reducing [Rosie's] sentence by more than one-third and be contrary to the aims of the original sentence." Id. This Court agreed with Judge

Hurley when it denied Rosie's fourth compassionate release motion.
Baker, 2023 WL 5334426, at *4 ("[T]his Court, like Judge Hurley,
finds that the nature and circumstances of [Rosie's] offense, in
conjunction with the history and characteristics of [Rosie] when
she committed the offense strongly weigh against a reduction in
the 45-year sentence the Court imposed, which sentence reflected,
then and now, the seriousness of the offense and the need to
provide just punishment for it." (emphasis added)).  Now, it agrees
the like result is compelled in the instant matter:  The nature
and circumstances of Defendant's offense, in conjunction with
Defendant's history and characteristics when he committed the
offense, strongly weigh against a reduction in the 50-year sentence
the Court imposed, which sentence reflected, then and now, the
seriousness of the offense and the need to provide just punishment
for it.  And, as aptly stated by Judge Hurley when he denied
Rosie's third compassionate release motion, which bears repeating
and which also applies here:  "Those who commit murder for hire
should be aware that they may well be required to serve the
entirety of their sentence."  September 2021 Order at 11.

        At bottom, to the extent there are any sentencing factors
which weigh in Defendant's favor, e.g., Defendant considered to be
a low risk of recidivism, they are overshadowed by the combined
force of the nature and circumstances of the offense, and the need
for the sentence imposed to:  reflect the seriousness of the

offense; promote respect for the law; provide just punishment for the offense; and, afford adequate deterrence to criminal conduct. See Riley, 777 F. Supp.3d at 173 (where defendant had been found guilty of two murders in aid of racketeering and being an accessory to a third murder, in considering Section 3553(a) Factors, finding "[t]he nature and circumstances of [defendant's] offenses, their seriousness, and the need to promote respect for the law, provide just punishment, and adequately deter criminal conduct weigh[ed] against a sentence reduction"); United States v. Frias, No. 01-CR-0307, 2022 WL 3700088, *2 (S.D.N.Y. Aug. 26, 2022) (where defendant was serving a life sentence related to a drug trafficking murder-for-hire plot, upon reconsideration of denial of compassionate release motion, ruling "the § 3553(a) factors that weigh in [defendant's] favor, such as the need to provide necessary medical care, are overshadowed by the combined force of 'the nature and circumstances of the offense' and the need for the sentence imposed to 'reflect the seriousness of the offense,' 'promote respect for the law,' 'provide just punishment for the offense,' 'afford adequate deterrence to criminal conduct,' and 'protect the public from further crimes of the defendant'" (citation modified)). Modifying Defendant's term of incarceration, given his serious and reprehensible criminal conduct, which was calculated and deadly, would disserve the above important sentencing factors. In sum, Defendant's sentence of 50-years

incarceration continues to be sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a).

*–*–*

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion (ECF No. 412) is **DENIED** in its entirety; and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 25, 2025
          Central Islip, New York